**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MICHAEL JONES,                                          *
a/k/a Latrina Marie Lopez,[1]
                                                       *
          Plaintiff,
                                                       *
v.                                                            Civil Action No. GLR-15-3065
                                                       *
DIRECTOR JOHN DOE, et al.,
                                                       *
          Defendants.
                                                       *

## **MEMORANDUM OPINION**

On November 18, 2015, this Court ordered counsel for the Department of Public Safety

and Correctional Services ("DPSCS") to show cause why injunctive relief should not be granted

in favor of Plaintiff.  (ECF No. 3).  The Response to Show Cause (ECF No. 6) was filed on

December 10, 2015.  Plaintiff filed an Opposition to the Response (ECF No. 7) on December 21,

2015.  The relief sought in the Complaint (ECF No. 1) as amended[2] (ECF No. 5) includes a

declaratory judgment stating that the actions taken by Defendants were unconstitutional;

injunctive relief ordering Plaintiff's treatment for gender dysphoria or gender identity disorder

("GID"); and an award to Plaintiff for the costs associated with this case.  Based upon the

undisputed record evidence before this Court and for the reasons stated below, the injunctive

relief sought shall be denied and the Complaint shall be dismissed in part.[3]

## **Background**

Plaintiff Michael A. Jones, who provides an alias of Latrina Marie Lopez, is an Interstate

Corrections Compact ("ICC") inmate who was transferred to the Maryland DPSCS from Ohio.

---

[1] The Clerk SHALL AMEND the docket to reflect Plaintiff's alias.
[2] Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 5) is GRANTED.
[3] Under 28 U.S.C. §1915(e)(2) this Court is directed to dismiss a case "at any time if the
court determines that . . . the action . . . fails to state a claim on which relief may be granted."

Jones alleges that she is a transgender woman incarcerated in a male correctional facility, North Branch Correctional Institution ("NBCI").  Jones claims she has identified as female since the age of eleven and "contemplates suicide daily."  Jones asserts that she tried to hide her true self and feelings, but felt compelled to reveal her feelings in September 2015.  Jones alleges that the suicidal thoughts have become more prominent because her requests to prison medical staff for hormone treatment and gender reassignment surgery have been ignored.  Jones alleges she wrote to several officials and staff members at NCBI requesting a copy of any existing policy and procedure in place regarding transgender inmates, but Jones never received a response.  Jones alleges her request to wear women's clothing and cosmetics was denied by a social worker who cited security concerns.  Further, Jones claims she requested to receive counseling for her feelings of disgust with her body as well as suicidal thoughts and depression, but never received a response.  Jones also claims she tried to ask for an explanation regarding why a female officer has not been assigned to conduct her strip searches, but she received no response.  Jones asserts that Bruce Liller, acting chief psychologist at NBCI, has denied Jones's request to be evaluated for GID.

Lastly, Jones requested to be placed in protective custody.  Jones alleges that, during her incarceration, she has repeatedly been sexually assaulted by her cellmates once they discovered that she is transgendered.  Jones claims that from June 2, 2015 through July 2, 2015, she was raped and beaten by her cellmate.  Jones claims to have been victimized by other inmates.  When Jones was denied protective custody and assigned another cellmate, she states she cut her wrist. Jones states that gender reassignment surgery, together with a transfer to a women's prison, is required to both address the dangers she faces and the issue of her gender dysphoria.

According to verified records filed with the Response to Show Cause, Jones is currently housed in a single cell segregated from the general population until it is determine whether she

exhibits psychological factors requiring her continued segregation.  (Resp. to Show Cause, Ex. 1, ECF No. 6).  "Jones does not have a verified diagnosis of gender identity disorder."  (Resp. Ex. 4).  Jones mentioned her self-diagnosis of gender identity disorder to medical staff for the first time on September 28, 2015.  (Id.).  At that time, Jones was incorrectly informed that hormonal therapy is not initiated where, as in her case, the therapy was not taking place prior to incarceration.[4]  (Id.).  Jones then refused an offer to be referred to the psychology staff.  (Id.).

Additionally, Jones has an extensive record of self-mutilating behavior.  Id.  Liller states that since Jones's arrival, she has been placed on suicide precautions four times.  (Resp. Ex. 3).  Jones has been diagnosed with antisocial and narcissistic personality disorders.  Currently, Jones is prescribed psychotropic medication for treatment of her self-reported Post Traumatic Stress Disorder and mood disorder.  Jones also has a history of refusing psychiatry passes.  (Resp. Ex. 1 at 4).

On September 28, 2015, Jones's reported several sexual assaults to a psychology associate during an interview regarding her segregated housing from general population.  Jones participated in the investigation, but refused to be seen by nurse practitioner Janette Clark on September 30, 2015, for a physical examination.  Upon investigation and interviews with the alleged assailants, Jones's reports were determined to be unsubstantiated.  (Resp. Ex. 6 at p. 15).

---

[4] The Court notes that hormonal therapy may be initiated during incarceration upon diagnosis with GID.  See e.g. Arnold v. Wilson, No. 1:13cv900 (LMB/TRJ), 2014 WL 7345755 (E.D.Va. Dec. 23, 2014) (involving transgendered woman whose diagnosis and treatment began while incarcerated).  However, questions of medical judgment are not subject to judicial review, and neither malpractice nor negligent diagnosis states a constitutional violation under the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 105-06; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986).

## Discussion

### 1. Preliminary Injunction

A preliminary injunction is an extraordinary and drastic remedy.  See Munaf v. Geren, 553 U.S. 674, 689–90 (2008).  To obtain a preliminary injunction, a movant must demonstrate: 1) that she is likely to succeed on the merits; 2) that she is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in her favor; and 4) that an injunction is in the public interest.  See Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20 (2008); Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009), vacated, 559 U.S. 1089 (2010) and adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C., 607 F.3d 355 (4th Cir. 2010).  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

### a. Medical Treatment

Jones has failed to demonstrate her likelihood of success on the merits of her claim regarding treatment for GID.  A prisoner is entitled to treatment if a

> [p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.

Bowring v. Goodwin, 551 F.2d 44, 47 (4th Cir. 1977).  The undisputed evidence in this case establishes that prior to September 28, 2015, Jones never reported that she suffers from gender dysphoria.  Jones's refusal to speak with psychology staff about any symptoms associated with

her alleged gender identity excuses any possible failure to diagnose Jones with the disorder. Jones's request for immediate treatment based on her recent revelation that she may suffer from GID is a request to permit Jones to self-prescribe treatment not currently recommended by a psychiatrist or physician.  The Court will deny Jones's request.[5]

### b.  Protective Custody

Additionally, Jones has failed to demonstrate that she will suffer immediate irreparable harm if she is not assigned to protective custody.  To establish the requisite irreparable harm, Jones must allege that imminent, "irreparable injury is <u>likely</u> in the absence of an injunction." <u>Winter</u>, 555 U.S. at 21–22.  Jones is currently housed in a single cell for behavioral reasons and will remain so housed it is determine whether she exhibits any psychological factors requiring her continued segregation.  Because Jones is in a single cell, she is not at risk of being sexually assaulted by a cellmate.  She simply has not shown that, in the absence of the injunction she seeks, an imminent assault is likely.

### 2.  Declaratory Judgment

Jones also seeks declaratory judgment pursuant to 28 U.S.C. § 2201 (2012).    The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  To properly exercise jurisdiction over a declaratory judgment action

---

[5] Though the Standards of Care, published by the World Professional Association for Transgender Health,[1] have established the generally accepted protocols for the treatment of GID including (1) hormone therapy; (2) a real-life experience of living as a member of the opposite sex; and (3) sex reassignment surgery, such treatment follows after a diagnosis of GID by a psychiatrist or physician.  <u>See</u> <u>De'lonta v. Johnson</u>, 708 F.3d 520, 522–23 (4th Cir. 2013) (citations omitted).

> (1) the complaint [must] allege[ ] an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court [must] possess [ ] an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court [must] not abuse its discretion in its exercise of jurisdiction.

Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004).

District courts have original jurisdiction pursuant to 28 U.S.C. § 1331 "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

Jones alleges a claim arising under the Eighth Amendment.  Prisoners have an Eighth Amendment right to reasonable protection from violence by fellow inmates.  Meadows v. Saunders, 14 F.3d 595 (4th Cir. 1993) (citing Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973).  In order to prevail on an Eighth Amendment claim of failure to protect from violence, a plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm.  See Pressley v. Hutto, 816 F.2d 977, 979 (4th Cir.1987).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. 825, 837 (1994).   "Nevertheless, even under this subjective standard, a prison official cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Brice v. Va. Beach, 58 F.3d 101, 105 (4th Cir. 1995).

Jones has alleged that she is vulnerable to assaults, harassment, and discrimination because she is transgendered.   See Farmer, 511 U.S. at 847 (finding transfer of young transgendered inmate to high-security prison with history of inmate assaults may amount to deliberate indifference); Makdessi, 789 F.3d at 136 (finding that small-statured, vulnerable

6

inmate may prove claim for deliberate indifference due to prison's failure to place him in protective custody).  Jones is currently housed in a single cell segregated from the general population until it is determine whether she exhibits any psychological factors requiring her continued segregation.

Though the Court finds that her risk of future sexual assault is not immediate at this time and does not warrant injunctive relief, Jones has reported that she has been the victim of several sexual assaults.  Although Jones's claims were determined to be unsubstantiated, "[a] prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief." Woodhous, 487 F.2d at 890.

At this stage of the litigation, the Court finds that Jones may be entitled to declaratory relief regarding her claim for deliberate indifference for Defendants' failure to place her in protective custody, but has failed to demonstrate the required elements for a preliminary injunctive relief.

## Conclusion

Accordingly, the Complaint is DISMISSED as to Jones's request for a preliminary injunction.  This case shall proceed as to Jones's request for declaratory relief.  A separate Order follows.

Entered this 28th day of January, 2016                          /s/

_____
George L. Russell, III
United States District Judge