IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL JONES,                           *
a/k/a Latrina Marie Lopez,
                                         *
        Plaintiff,
                                         *
v.                                                    Civil Action No. GLR-15-3065
                                         *
DIRECTOR JOHN DOE, et al.,
                                         *
        Defendants.
                                         *

## MEMORANDUM OPINION

        Pending before the Court are Defendants' Motions to Dismiss or for Summary Judgment (ECF Nos. 16, 20) and Plaintiff Michael A. Jones's Motion for Appointment of Counsel (ECF No. 23).  Having considered the Motions and supporting documents, the Court finds no hearing necessary in this matter.  See Local Rule 105.6 (D.Md. 2014).  For the reasons stated below, the Court will grant Defendants' Motions and deny Jones's Motion.

## I.    BACKGROUND

        On October 8, 2015, Plaintiff Michael A. Jones an inmate who was transferred to the Maryland Department of Public Safety and Correctional Services ("DPSCS") from Ohio, initiated this action seeking a declaratory judgment stating that the actions taken by Defendants were unconstitutional; injunctive relief ordering Jones's treatment for gender dysphoria; and an award to Jones for the costs associated with this case.  (ECF No. 1).  On January 28, 2016, the Court denied Jones's request for a preliminary injunction.[1]  (ECF No. 10).

---

[1] Also pending is Jones's Motion for Preliminary Injunction (ECF No. 9).  Because the Court denied Jones's request for preliminary injunctive relief in its January 28, 2016 Memorandum Opinion (ECF No. 10), the Court will deny Jones's Motion.

Gender Dysphoria Allegations

Jones alleges that she is a transgender woman incarcerated in a male correctional facility, North Branch Correctional Institution ("NBCI"). Jones claims she has identified as female since the age of eleven and contemplates suicide daily. Jones asserts that she tried to hide her true self and feelings, but felt compelled to reveal her feelings in September 2015. Jones alleges that the suicidal thoughts have become more prominent because her requests to prison medical staff for hormone treatment and gender reassignment surgery have been ignored. Jones alleges she wrote to several officials and staff members at NCBI requesting a copy of any existing policy and procedure in place regarding transgender inmates, but Jones never received a response. Further, Jones claims she requested to receive counseling for her feelings of disgust with her body as well as suicidal thoughts and depression, but never received a response. Jones asserts that Defendant Bruce Liller, acting chief psychologist at NBCI, has denied Jones's request to be evaluated for gender dysphoria.

On October 23, 2015—after initiating this action—Jones wrote a letter to Defendant Lauren Beitzel, stating she wanted to talk about her mental health, claiming that she hated her body, which made using the bathroom or shower difficult; that she had been sexually assaulted; and she is being denied the right to be a transgender woman. Beitzel attempted to speak with Jones the same day, but Jones refused to leave her cell to attend the visit and said she would only communicate through letters. Liller and Beitzel interviewed Jones on various occasions regarding her claim that she is a transgender woman and they concluded Jones does not present as a person suffering from gender dysphoria.[2]

---

[2] Defendant William Beeman is improperly designated as a physician and states that, as Registered Nurse, his duties do not include diagnosing prisoner patients with medical disorders nor does he initiate a medical plan of care for "gender disorders." (ECF No.16-5).

On December 8, 2015, Liller conducted a diagnostic interview of Jones in light of her claim of being a transgender woman. Liller states that Jones had to be prompted to begin discussing her belief she is a woman and Liller noted this is atypical in his experience with gender dysphoria clients in both prison and private settings. (ECF No. 20-9). While Jones admitted reading about transgender issues, she could not differentiate between what it means to be gay, bi-sexual, homosexual, or transgender. (Id.). Jones also told Liller she "became" a transgender woman because she was raised by females and did not have a father figure in her life. Id. Liller notes the latter statement is very atypical for a person with gender dysphoria who generally view their development as nature, not nurture. Liller noted that the theme of their discussion centered on Jones's desire to be housed alone to be safe from sexual assault by other inmates. (Id.). Given these circumstances, Liller found that Jones's conduct was inconsistent with the conduct of those diagnosed with gender dysphoria.

Beitzel saw Jones on January 4, 2016, but Jones never mentioned her gender issues and focused instead on her view that she is powerful. On January 7, 2016, Jones met with Defendant Monica Wilson and informed Wilson that she had been on a hunger strike for five days because she had not received a copy of the transgender policy. (ECF No. 20-8). Wilson assured Jones she should feel free to discuss her feelings about her gender, but Jones laughed, stating the courts are working on the issue. (Id.). Also, the medical staff was unable to confirm Jones's claimed prior treatment for gender dysphoria in Ohio. (Id.).

Sexual Assault Allegations

Jones alleges that, during her incarceration, she has repeatedly been sexually assaulted by her cellmates once they discovered that she is a transgender woman. Jones claims that from June

2, 2015 through July 2, 2015, she was raped and beaten by her cellmate.  Jones claims to have been victimized by other inmates.

On September 28, 2015, Jones informed a clinical psychologist that she has been sexually assaulted many times while incarcerated since her transfer to NBCI.  (ECF No. 20-8).  Jones's claim of sexual assault was investigated by prison personnel.  There were no medical records indicating that Jones had sought attention around the time of the alleged assaults.  Jones also declined to receive medical attention after reporting the assaults.

Jones has been assigned to a single cell since October 14, 2015 for prison staff to determine whether a cellmate can be safely housed with Jones.  On October 8, 2015, DPSCS's inmate affairs department received a letter from Jones address to Defendant Secretary Stephen T. Moyer requesting assignment to protective custody and claiming she was in fear for her life.  On October 20, 2015, Jones participated in an intake screening process pursuant to the Prison Rape Elimination Act ("PREA") where she was found to be at risk of victimization.  (ECF No. 20-11). Also on October 20, 2015, Acting Commissioner Randall Watson responded to Jones's letter advising that the assault allegations were being investigated and that her current assignment to a single cell addresses her need for safe housing.  Watson further advised that Jones did not meet the criteria for assignment to protective custody, given her assignment to a single cell.  After an investigation, prison staff concluded that Jones's reported assaults were unsubstantiated.

On November 6, 2015, Jones was seen by Wilson for a PREA counseling session.  (ECF No. 20-8).  The session, however, did not include a discussion of the alleged sexual assault because Jones directed the entire conversation toward what she wanted to receive and what she would do if she did not receive it.  Jones listed her "demands" as a transfer back to Ohio; gender reassignment surgery; ordering women's clothing; and a move to another housing tier.  (Id.).

She further stated that she sought assignment to a single cell and protective custody.  Wilson opined that Jones was attempting to manipulate prison staff for her personal gain by making various reports.

## II.    DISCUSSION

### A.  Standard of Review

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element.  Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010).  In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in

Rule 56." <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)).  Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson</u>, 477 U.S. at 247–48.

A "material fact" is one that might affect the outcome of a party's case.  <u>Id</u>. at 248; <u>see</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all

inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).

Defendants rely on exhibits attached to their Motions.  Because the Court will consider Defendants' exhibits, the Court must convert the Motions to Dismiss to motions for summary judgment.[3]

## B.  Analysis

### 1.  Failure to Protect from Violence

Jones alleges a claim arising under the Eighth Amendment.  Prisoners have an Eighth Amendment right to reasonable protection from violence by fellow inmates.  Meadows v. Saunders, 14 F.3d 595 (4th Cir. 1993) (citing Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973).  In order to prevail on an Eighth Amendment claim of failure to protect from violence, Marshall must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm.  See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979)).

> Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

---

[3] "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion."  Carter v. Balt. Cty., 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

*Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted).  For a prison official to be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement, "the official [must know] of and disregard[] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837; see also *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997).  A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established.  *Farmer*, 511 U.S. at 834, 837.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury' or substantial risk to either injury."  *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 834).  The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citations omitted).  Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn.  *Id*. at 837.  Where prison officials responded reasonably to a risk, they may be found free of liability.  *Id*. at 844.

Jones has alleged that she is vulnerable to assaults, harassment, and discrimination because she is a transgender woman and has been found to be at risk of victimization.  Jones is

currently housed in a single cell segregated from the general population until it is determined whether she exhibits any psychological factors requiring her continued segregation. Further, Jones's claims of sexual assault by other inmates were investigated and ultimately determined to be unsubstantiated. Jones has been informed that she does not meet the criteria for protective custody because she is currently housed in a single cell.

Based on the record evidence, the Court finds that Defendants have not been deliberately indifferent to a specific known risk of harm to Jones. As such, Defendants are entitled to judgment as a matter of law regarding this claim.

### 2. Medical Claim

The Eighth Amendment also prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citing Furman v. Georgia, 408 U.S. 238, 392–93 (1972)). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. Estelle, 429 U.S. at 106. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer, 511 U.S. at 837.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. Id. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich, 129 F.3d at 340 n.2. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a

risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Corr. Ctr., 58 F.3d 101,

105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844).  If the requisite subjective knowledge is

established, an official may avoid liability "if [he] responded reasonably to the risk, even if the

harm was not ultimately averted." Farmer, 511 U.S. at 844.  Reasonableness of the actions taken

must be judged in light of the risk the defendant actually knew at the time.  See Brown v. Harris,

240 F.3d 383, 390 (4th Cir. 2000).

A prisoner's disagreement with a prescribed course of treatment does not establish

deliberate indifference and, therefore, does not state a claim.  See Peterson v. Davis, 551 F.Supp.

137, 146 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Likewise, claims of medical

negligence or disputed questions of medical judgment are not cognizable because they do not

involve deliberate indifference.  See Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975)

(stating questions of medical judgment are not subject to judicial review).  Indeed, the "mere

failure to treat all medical problems to a prisoner's satisfaction . . . is insufficient to support a

claim under § 1983." Peterson, 551 F.Supp. at 146; accord Fore v. Goodwin, 407 F.Supp. 1145,

1146 (citing Cole v. Williams, 526 F.2d 588 (4th Cir. 1975)) ("A prisoner cannot be ultimate

judge of what medical treatment is necessary or proper . . . .").

There is "no underlying distinction between the right to medical care for physical ills and

its psychological and psychiatric counterpart." Bowring v. Goodwin, 551 F.2d 44, 47 (4th  Cir.

1977).

> [A prisoner] is entitled to psychological and psychiatric treatment
> if a physician or other health care provider, exercising ordinary
> skill and care at the time of the observation, concludes with
> reasonable certainty (1) that the prisoner's symptoms evidence a
> serious disease or injury; (2) that such disease or injury is curable
> or may be substantially alleviated; and (3) that the potential for
> harm to the prisoner by reason of delay or the denial of care would
> be substantial.  The right to treatment is limited to that which may

> be provided upon a reasonable cost and time basis and the essential
> test is one of medical necessity and not simply that which may be
> considered merely desirable.

Id. at 47–48.

Jones asserts that she has been denied treatment due to Defendants' failure to refer her to a gender dysphoria specialist and NBCI's policy of refusing to provide inmates with hormone treatment if the inmates did not receive hormone treatments prior to incarceration. The Court notes that hormonal therapy may be initiated during incarceration upon diagnosis with gender dysphoria. See, e.g., Arnold v. Wilson, No. 1:13cv900 (LMB/TRJ), 2014 WL 7345755 (E.D.Va. Dec. 23, 2014) (involving transgender woman whose diagnosis and treatment began while incarcerated). The Standards of Care, published by the World Professional Association for Transgender Health, have established the generally accepted protocols for the treatment of gender dysphoria including (1) hormone therapy; (2) a real-life experience of living as a member of the opposite sex; and (3) sex reassignment surgery. See De'lonta v. Johnson, 708 F.3d 520, 522–23 (4th Cir. 2013) (citations omitted). Such treatment, however, follows a diagnosis of gender dysphoria by a psychiatrist or physician.

Liller is a licensed mental health practitioner with additional training in the diagnosis and treatment of gender dysphoria. Liller evaluated Jones for her claims of being a transgender woman and did not conclude Jones suffers from gender dysphoria or that she is a transgender woman. Defendants cannot be said to be deliberately indifferent to Jones's medical need to receive treatment for gender dysphoria because Jones has not been diagnosed with gender dysphoria.[4] As such, the Court finds that the record evidence does not support a finding of

---

[4] Questions of medical judgment are not subject to judicial review, and neither malpractice nor negligent diagnosis states a constitutional violation under the Eighth

deliberate indifference to a serious medical need. The Court will, therefore, grant Defendants' Motions as to this claim.

### III.   CONCLUSION

Accordingly, Defendants' Motions to Dismiss or for Summary Judgment (ECF Nos. 16, 20) are GRANTED. Jones's Motion for Appointment of Counsel (ECF No. 23) and Motion for Preliminary Injunction (ECF No. 9) are DENIED. The Complaint (ECF No. 1) is DISMISSED. A separate Order follows.

Entered this 26th day of May, 2016

/s/

_____
George L. Russell, III
United States District Judge

---

Amendment.   Estelle, 429 U.S. at 105–06; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986).